## UNITED STATES v. GARBUTT et al.

District Court, D. Wyoming. April 26, 1928.
Additional Memorandum, May 16, 1928.

No. 1650.

1. Internal revenue ⊛27(2)—Corporation's beneficiaries are liable for taxes due at time of liquidation.

If a tax is due and owing from a corporation when liquidated, the beneficiaries of such corporation become liable therefor, as they take its assets impressed with a trust.

2. Internal revenue ⊛7(11)—Defunct corporation's taxable profit or loss from sale of oil properties should be computed on basis of sums advanced in acquiring and developing properties, less depreciation and depletion.

Net profit or loss from sale of oil property of defunct corporation should be computed for income tax purposes on basis of sums advanced in acquiring and developing property, minus allowance for depreciation and depletion up to and including year of sale, together with profits for such year.

3. Internal revenue ⊛7(11)—Government's computation of lesser net profit on sale of defunct corporation's properties than that of liquidating stockholders will be adopted in fixing tax.

Where government's computation of defunct corporation's net profits from sale of oil properties is less than amount of liquidating stockholders' computation, former computation will be adopted for purpose of fixing income tax.

In Equity. Suit by the United States against C. W. Garbutt and others. Decree for the United States.

A. D. Walton, U. S. Atty., of Cheyenne, Wyo., and C. M. Charest, Gen. Counsel, and Ralph E. Smith, Sp. Atty., both of the Bureau of Internal Revenue, of Washington, D. C., for the United States.

H. Glenn Kinsley, of Sheridan, Wyo., for defendants.

KENNEDY, District Judge. [1] This is a suit in which the plaintiff seeks to recover certain income taxes from the defendants. The tax question arises primarily against a corporation known as the Farnham Oil & Gas Company, which sold out its entire holdings in 1919 and distributed its assets to its stockholders, among some of whom were the defendants in this case, and it is brought against them upon the theory that they, being the liquidating stockholders of a defunct corporation, whose property passed into their hands at the time the tax was due and owing, became personally liable for the tax in proportion as they received these assets. I take it that there may be no question under the authorities that, if a tax is due and owing from a corporation at the time it is liquidated, those who are the beneficiaries of the corporation become liable for the unpaid tax, as they take such assets impressed with a trust. Updike et al. v. United States, 8 F. (2d) 913 (C. C. A. 8). The question here involved is as to whether or not any taxes were then due and owing.

[2] The tempest rages principally around the point as to whether there was a profit or loss involved in the sale of the corporate assets in 1919, concerning which year the addi-

tional tax is sought to be collected. In this case I am impressed with the thought, which I have always secretly indulged, that income tax experts can with a pencil and a few sheets of paper very easily convert profits into losses, and vice versa, by the use of methods which are beyond the conception of the average layman. When so-called tax experts can arrive at conclusions so far divergent that one maintains there is a profit accruing to a concern in the sale of its property of some $30,000, while another with equal earnestness contends that there was a loss in excess of $13,000, the court finds itself in much the same position in wading through the maze of testimony which is offered to maintain these contentions as is a jury in the consideration of expert medical testimony couched in proper technical phraseology. Not having been a student of accountancy, and particularly as related to the computation of income tax returns, I can claim no credit in being able to technically solve the mystery. It does seem to me, however, if, when a man acquires a piece of property at a certain price, and develops that property by placing additional sums in it, and subsequently sells it, that the net profit from the sale of the property ought to be the difference between the two, if the amount received is in excess of the amount put in, or the net loss, if it is less than the amount expended.

When a corporation purchases and develops oil property, it is usually done with funds which are furnished by some one, and when the property is sold they usually expect to get this money back before they can compute any net profit. Using this common-sense rule as a basis for computation in the case at bar, it seems to me that the record discloses beyond question that this corporation at least advanced sums in acquiring and developing its properties as follows:

| | |
|---|---|
| Lorena Bell lease | $26,278.75 |
| Minnie R. Bell lease | 29,964.74 |
| New Lorena Bell lease | 15,000.00 |
| Anita lease | 5,000.00 |
| House building | 537.03 |
| Total | $76,780.52 |

From this sum should be deducted a certain amount allowed under the recognized rules for depreciation and depletion, up to and including the year 1919, which appears

27 F.(2d)—63½

to be $11,775.38, leaving the company with the net amount invested of $65,005.14. The property admittedly was sold for $62,497.80, which, deducted from the corrected cost of the property, leaves a net loss on the sale of $2,507.34. It should make no difference whether the value of March 1, 1913, or some other basis of computation, is used; the amount actually expended must be absorbed and first returned to the investor before profit is computed.

With this figure of net loss on sale, together with the profits shown by the books of the company for the year 1919 ascertained, it should be comparatively easy for the experts to figure the tax, after making the proper corrections and adjustments. The court will therefore call upon the parties for a new computation of the tax under the law, with the indicated figure as a basis in determining the profit or loss accruing from the sale of the property in 1919, and, when such computations are furnished to the court, this memorandum will be completed and findings made as to the tax due. Counsel will kindly furnish the court with their revised computations on or before May 14, 1928.

Additional Memorandum.

KENNEDY, District Judge. [3] On April 26, 1928, a memorandum was filed, in which the finding of the court was directed to the determination of a single item relating to the profit or loss upon a sale of assets by the Farnham Oil & Gas Company, a corporation, and calling for a further computation of the parties, with that item as a basis, as to the tax sued for. Such computations now having been made and placed on file in the court, it appears that that computed for and on behalf of the plaintiff is less than the amount as computed for and on behalf of the defendants. The computation of the plaintiff will therefore be adopted, for the purposes of the findings of this court upon the matter of the tax for the year 1919, which amount is found to be $458.74. The amount previously paid being $114.44, the balance remaining is $344.30. A decree may therefore be presented as of the date of this memorandum, for a finding in favor of the plaintiff and against the defendants in said latter amount, with proper interest and costs to be taxed against said defendants. Proper exceptions shall be reserved to the parties.